IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BRYAN JOSEPH LAYTON, Institutional ID No. 06144600, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:21-CV-122-M-BQ |
| MARSHA McCLAIN, *et al.*, | § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. Proceeding pro se and *in forma pauperis*, Plaintiff Bryan Joseph Layton, also known as Mary Kathleen Layton,[1] filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while housed at the Texas Civil Commitment Center (TCCC) in Littlefield, Texas. For the reasons set forth below, the undersigned recommends that the United States District Judge dismiss Layton's Eighth Amendment deliberate indifference to serious medical needs claim in accordance with 28 U.S.C. § 1915(e)(2)(B).[2]

---

[1] Layton apparently identifies as female (*see* ECF No. 15); however, following Fifth Circuit precedent, the Court refers to Plaintiff using masculine pronouns. *See United States v. Varner*, 948 F.3d 250, 255–58 (5th Cir. 2020) ("declin[ing] to enlist the federal judiciary in this quixotic undertaking" of deciphering and applying growing list of preferred gender-dysphoric pronouns, citing complexity of the subject, lack of congressional action in the area, and questions it potentially engenders concerning judicial impartiality).

[2] By separate order, the Court has required Defendants to answer or otherwise plead with respect to Layton's claims under the Equal Protection Clause and the First Amendment.

I.     **Procedural History and Background**

Layton filed his Complaint on May 25, 2021, along with an application to proceed *in forma pauperis* (IFP). ECF Nos. 1, 3. After reviewing Layton's initial request to proceed IFP, the Court ordered Layton to produce additional information in support of his IFP request, prior to the Court ruling on his motion. ECF No. 7. In response, Layton submitted supporting documentation. ECF No. 11. Based on the information provided, the Court granted Layton's motion to proceed IFP. ECF No. 12.

Layton was tried and civilly adjudged to be a sexually violent predator (SVP), as defined by Texas Health & Safety Code § 841.003. Upon his release from the Texas Department of Criminal Justice (TDCJ) after completing his criminal sentence, the 435th Judicial District Court of Montgomery County, Texas, committed Layton to outpatient treatment and community supervision. The State of Texas transferred Layton to the Bill Clayton Detention Center in Littlefield, Texas,[3] where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081.

Layton is confined pursuant to an order of civil commitment; therefore, he is not considered a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening procedures of 28 U.S.C. § 1915A. *See Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013) (concluding that a civilly committed SVP was not a prisoner within the meaning of the Prison Litigation Reform Act); *Michau v. Charleston Cnty.*, 434 F.3d 725, 727 (4th Cir. 2006) (same); *Allen v. Seiler*, No. 4:12–CV–414–Y, 2013 WL 357614, at *1 n.1 (N.D. Tex. Jan. 30, 2013) (citing *Jackson v. Johnson*, 475 F.3d 261, 266 (5th Cir. 2007)) (same), *aff'd*, 535 F. App'x

---

[3] The Bill Clayton Detention Center is also known as the TCCC, which is apparently currently operated by Management & Training Corporation (MTC), a private company under contract with the Texas Civil Commitment Office (TCCO).

423, 423 (5th Cir. July 12, 2013) (per curiam). Because Layton is proceeding IFP, however, his pleadings are nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2)(B). Accordingly, the Court reviewed Layton's Complaint, as well as authenticated records from the TCCC and the TCCO, and entered an order directing Layton to complete a questionnaire in accordance with *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976) to further develop his allegations. ECF No. 14. Layton timely completed and returned the questionnaire. ECF No. 15.

## II.   Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III. Discussion

#### A. Layton's Claims

Layton asserts claims against the following Defendants: (1) Marsha McClain, Director of the TCCO; (2) Mr. Cochran, facility administrator at the TCCC; (3) Mr. Shmoker, assistant facility administrator for the TCCC; (4) Tiffany Graves; (5) Dr. Keaton, "Chief medical for MTC"; and (6) Ms. Beltran. Compl. 2–3, ECF No. 1; Questionnaire 8, ECF No. 15. Layton sues all Defendants in their individual and official capacities. Compl. 5.

According to Layton, he has been diagnosed with gender dysphoria, which "is a clear and established 'serious medical condition.'" *Id.* Layton alleges that MTC maintains a "blanket policy" that denies him, and other transgender residents, access to, inter alia, sex-reassignment surgery (SRS). *Id.*; Questionnaire 3. Layton attributes the creation of this policy to Defendants McClain, Cochran, Graves, and/or Dr. Keaton (Questionnaire 4, 10, 13) and asserts that Defendants Beltran, Cochran, Shmoker, Graves, and/or Dr. Keaton enforce the policy. *Id.* at 8, 10–14.

Stating MTC does not provide "non-emergent surgery," Defendants have purportedly denied Layton SRS, despite his offers to pay for the surgery. Compl. 5; Questionnaire 2–4. Layton believes this wholesale denial does not "account [for] each individuals [sic] needs" and violates

the Constitution. Compl. 5; Questionnaire 3–4. Similarly, Layton contends that Defendants have denied him "'the minimally adequate care' to treat [his] serious medical need of Gender Dysphoria" (Compl. 5), although Layton acknowledges that he has received hormone replacement therapy in the form of Estradiol injections. Questionnaire 15.

Layton avers that Defendants' purported constitutional violation has caused psychological trauma and depression, and has driven him to attempt castration once and suicide twice. *See id.* at 3–14. As it relates to his Eighth Amendment claim, Layton seeks injunctive relief in the form of a Court order directing Defendants "to allow [him] to pursue [his] Sex Reassignment Surgery." Compl. 6.

### B. Based on Fifth Circuit precedent, Layton has failed to state a viable claim under the Eighth Amendment.

As a civilly committed person, Layton's right to reasonably adequate medical care derives from the Eighth Amendment. *See Rogers v. Caswell*, 823 F. App'x 263, 264–65 (5th Cir. 2020) (analyzing whether civilly committed plaintiff pleaded facts supporting claim for deliberate indifference to serious medical needs); *Bohannan*, 527 F. App'x at 292 (applying Eighth Amendment standard to SVP's claim for deliberate indifference to serious medical needs); *see also Clark v. Rivas*, No. 5:17-CV-228-M-BQ, 2018 WL 3950429, at *5 (N.D. Tex. July 17, 2018) (same), *R. & R. adopted by* 2018 WL 3946456 (N.D. Tex. Aug. 16, 2018).

Under the Eighth Amendment, institutional officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). A plaintiff seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth

Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (per curiam) (internal quotation marks omitted)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Turning to Layton's specific claim regarding the denial of access to SRS, in a prison setting the Fifth Circuit held in *Gibson v. Collier* that "[a] state does not inflict cruel and unusual punishment by declining to provide sex reassignment surgery to a transgender inmate." 920 F.3d 212, 215, 219–24 (5th Cir. 2019). Rejecting the dissent's analysis, the court specifically noted that the Eighth Amendment does not require an institution to provide an "individualized assessment" of an inmate's qualification for SRS; therefore, "a blanket ban" on SRS is not unconstitutional. *Id.* at 216, 224. Despite one out-of-district case[4] calling into question the continued viability of the medical basis for *Gibson*'s holding, *Gibson* remains controlling precedent and would logically be

---

[4] *See Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1017–18 (W.D. Wis. 2019) (recognizing that *Gibson* and its cited "medical testimony [is] now some thirteen years old"); *but see Haverkamp v. Linthicum*, 6 F.4th 662, 667 (5th Cir. 2021) ("The operative complaint does not assert the Eighth Amendment claim [based on prison officials' denial of SRS] asserted in [prisoner's] original pleading, which, in any event, the *Gibson* panel later foreclosed."); *Williams v. Kelly*, 818 F. App'x 353, 354 (5th Cir. 2020) (per curiam) (concluding that inmate's Eighth Amendment claim of deliberate indifference to serious medical need based on state correctional facility's refusal to perform SRS is "foreclosed by our recent holding in *Gibson*"), *cert. denied*, 141 S. Ct. 678 (2020).

7

extended by the Fifth Circuit to civil committees, given this circuit's application of the Eighth Amendment to SVPs' medical care claims. *See, e.g.*, *Rogers*, 823 F. App'x at 264–65.

Layton's offer to pay for the SRS, as opposed to forcing Defendants to pay for it, is a distinction without a difference. *Gibson* specifically rejected the notion that the Constitution requires an "individualized assessment" of one's qualification for SRS (*Gibson*, 920 F.3d at 216, 224), which is what Layton seeks, i.e., his request is different than that of others desiring SRS because he claims he is willing to pay for it. Regardless of the means by which Layton seeks to obtain SRS—via MTC providing, and paying for, the surgery; Layton paying for the surgery and using MTC physicians; or Layton paying for and obtaining the surgery through an outside source—Defendants' alleged failure to permit Layton access to SRS does not violate the Constitution. *Gibson*, 920 F.3d at 216, 228. "There is no intentional or wanton deprivation of care if a genuine debate exists within the medical community about the necessity or efficacy of that care"—i.e., SRS. *Id.* at 220.

For these reasons, the undersigned recommends dismissal of Layton's constitutional claim regarding the purported denial of SRS against all Defendants in their individual capacities.

### C. Layton's official capacity claims against Defendants fail because he has not alleged a viable Eighth Amendment claim.

Layton asks the Court to grant him an injunction directing Defendants "to allow [him] to pursue [his] Sex Reassignment Surgery." Compl. 6. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "If . . . a less drastic remedy . . . [is] sufficient to redress [plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted" (*id.* at 165–66) because it "should only issue when essential." *Google, Inc. v. Hood*, 822 F.3d 212, 221 (5th Cir. 2016).

8

To obtain a permanent injunction, a plaintiff must plead and prove "(1) the existence of a substantial threat of irreparable harm that outweighs any harm the relief would accord to the defendants, (2) that there is no adequate remedy at law, and (3) that granting the injunction will not disserve the public interest." *Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002). And rather than simply proving a substantial *likelihood* of success on the merits, as with a preliminary injunction, to obtain "a permanent injunction . . . the plaintiff must demonstrate *actual* success on the merits." *Id.* (emphasis added).

As demonstrated above, Layton has failed to plead sufficient facts showing that Defendants engaged in conduct that violated the Constitution with respect to his Eighth Amendment claim. The undersigned accordingly recommends that the district judge dismiss Layton's claim for injunctive relief against Defendants for want of a constitutional violation. *See Johnson v. CitiMortgage, Inc.*, No. 3:14–CV–1794–M–BH, 2015 WL 269970, at *5 (N.D. Tex. Jan. 21, 2015) (denying claim for injunctive relief where breach of contract claim was subject to dismissal on the merits).

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge dismiss Layton's Eight Amendment deliberate indifference to medical care claim against Defendants in their individual and official capacities in accordance with 28 U.S.C. § 1915(e)(2)(B).

### V. Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 11, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE