IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| BRYAN JOSEPH LAYTON, <br> Institutional ID No. 06144600, <br><br> Plaintiff, <br><br> v. <br><br> MARSHA McCLAIN, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 5:21-CV-122-M-BQ <br> § <br> § <br> § <br> § |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

At the time he filed this 42 U.S.C. § 1983 action, pro se Plaintiff Bryan Joseph Layton identified as a transgender woman. *See* Compl. 5–6, ECF No. 1. Layton contends that Defendants Marsha McLane, John Cochran, Wayne Schmoker, Tiffany Graves, and Dr. Daniel Keaton (collectively, Defendants)[1] violated his rights under the Equal Protection Clause and First Amendment while housed at the Texas Civil Commitment Center (TCCC) by enforcing policies that deny him care and items of a "gender affirming" nature. *Id.* at 5; Questionnaire 5–11, ECF No. 15; *see* ECF No. 23. Layton only seeks injunctive relief concerning these alleged constitutional violations, i.e., a court order: (1) permitting him to wear gender-affirming clothing and makeup; (2) allowing him to pursue sex-reassignment surgery (SRS); and (3) changing his name and gender markers. Compl. 6; *see* Questionnaire 3, 10–11.

Defendants now assert, however, that Layton has independently decided "to cease his gender transition entirely" and therefore no longer wants the requested injunctive relief. ECF No.

---

[1] The Court relies on the spelling of Defendants McLane's and Schmoker's surnames as set forth in their Answers and motion. *See* ECF Nos. 24, 30, 58.

58, at 2. As a result, Defendants move to dismiss Layton's claims in accordance with Rules 12(b)(1) and (h)(3), arguing the Court lacks subject-matter jurisdiction over Layton's claims. *Id.* In support of their motion, Defendants filed a sworn declaration signed by Layton confirming that he no longer seeks the relief requested in this action. ECF No. 59. Layton, in his response, does not dispute Defendants' representation. *See* ECF No. 61. Because Layton's claims for injunctive relief are moot and that is the only relief he pursues, the undersigned recommends that the United States District Judge **GRANT** Defendants' Rule 12(b)(1) and (h)(3) motion and **DISMISS** this case without prejudice.[2]

## I.    Background

### A. Procedural History

Layton was tried and civilly adjudged to be a sexually violent predator (SVP), as defined by Texas Health & Safety Code § 841.003. Upon his release from the Texas Department of Criminal Justice (TDCJ) after completing his criminal sentence, the State of Texas transferred Layton to the Bill Clayton Detention Center in Littlefield, Texas,[3] where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081. Layton asserts claims under 42 U.S.C. § 1983 arising out of events that occurred during his confinement at the TCCC. *See* ECF Nos. 1, 15.

After screening Layton's Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), the Court entered an order requiring Defendants to answer or otherwise plead with respect to Layton's claims under the Equal Protection Clause and the First Amendment. ECF No. 17. As to Layton's

---

[2] The Honorable Barbara M. G. Lynn, Senior United States District Judge, referred Defendants' motion to dismiss, along with several other motions (ECF Nos. 55, 56, 57), to the undersigned for "recommendation or determination." ECF No. 60.

[3] The Bill Clayton Detention Center is also known as the Texas Civil Commitment Center (TCCC), which is apparently operated by Management & Training Corporation (MTC), a private company under contract with the Texas Civil Commitment Office (TCCO).

Eighth Amendment claims, the undersigned recommended the district judge dismiss them. ECF No. 18. The undersigned also recommended dismissal of Defendant Beltran when attempts to serve her were unsuccessful. ECF No. 34. The district judge adopted the undersigned's recommendations. ECF Nos. 23, 39.

Defendants McLane, Cochran, Schmoker, Graves, and Keaton timely answered the live claims (ECF Nos. 24, 30), and the Court entered a scheduling order. ECF No. 48. In accordance with the scheduling order, Layton filed a motion to amend to join three other plaintiffs. ECF No. 49. The Court denied Layton's motion because: (1) none of the putative plaintiffs signed the motion; (2) Layton's and the putative plaintiffs' confinement "inherently create[d] certain impracticalities—ensuring each plaintiff represents himself, the possibility of coercion, and whether plaintiffs are able to communicate and/or coordinate with each other during pendency of the litigation (conditions over which the Court has no control)"; and (3) the Court was unable to determine, based on Layton's filing, whether the putative plaintiffs' claims arise out of the same transaction or occurrence and whether there are common issues of law or fact, as is required by Rule 20. ECF No. 51, at 4–5. Layton's extant claims concern his request for injunctive relief, seeking to block MTC's purported policy that denies him care and items of a "gender affirming" nature. Compl. 5–6.

### B. Layton's Allegations

According to Layton, he has been diagnosed with gender dysphoria, which "is a clear and established 'serious medical condition.'" *Id.* at 5. Layton alleges that MTC maintains a "blanket policy" that denies him, and other transgender residents, access to SRS, makeup, gender-affirming clothing, and "gender and name marker changes." *Id.*; Questionnaire 3. Layton attributes the creation of this policy to Defendants McLane, Cochran, Graves and/or Dr. Keaton (Questionnaire

3

4, 10, 13) and asserts that Defendants Cochran, Schmoker, Graves, and/or Dr. Keaton enforce the policy, resulting in denial of the foregoing. *Id.* at 8, 10–14. Layton asserts that the policy and resulting denial violate his rights under the Equal Protection Clause and the First Amendment. Compl. 5; Questionnaire 6–9. He sues Defendants in their official and individual capacities. Compl. 5.

Layton avers that Defendants' purported constitutional violations have caused psychological trauma and depression and have driven him to attempt castration once and suicide twice. *See* Questionnaire 3–14. Layton solely seeks injunctive relief in the form of a Court order directing Defendants "to allow [him] to pursue . . . [SRS] . . . [and] initiate a policy that allows Residents that are Transgender the same access to clothing and make-up that the female officers and other staff are allowed to use." Compl. 6. Layton also apparently wants to be identified by his preferred pronouns and name both verbally and in civil commitment documents at the TCCC. *See* Questionnaire 3; Compl. 5.

### C. The Parties' Positions

Defendants move to dismiss Layton's Complaint and all claims alleged under Rules 12(b)(1) and (h)(3). Defs.' Mot. to Dismiss 1, ECF No. 58. According to Defendants, "Layton's claims are now moot because he no longer desires the relief sought through this lawsuit." *Id.* at 3. As a result, "there is no longer any live controversy between the parties." *Id.* Along with their motion, Defendants submit Layton's sworn declaration. ECF No. 59.

In his declaration, Layton explains that "[a]t the time [he] filed this lawsuit, [he] identified as a transgender woman and was prescribed hormone therapy as treatment for gender dysphoria." *Id.* But Layton recently "made the decision to cease [his] gender transition entirely, and ha[s] stopped hormone therapy." *Id.* "In light of that decision, [he] no longer want[s] any of the relief

sought by this lawsuit." *Id.* Layton does, however, state that because there are other transgender persons at the TCCC "that are being denied their right to the[] things" Layton sought through his lawsuit, this case "should not end with [him]." *Id.* He therefore intends to file "an untimely Joinder of Parties . . . to add the others." *Id.*

Layton's response to Defendants' motion asserts "this case should not be dismissed because it is an [e]xceptional" one. Pl.'s Resp. 2, ECF No. 61.[4] Specifically, Layton alleges that other transgender individuals at the TCCC will "continue to suffer constitutional deprivations" absent relief in this action. *Id.* at 2–3. Layton therefore "vehemently oppose[s]" Defendants' motion. *Id.* at 4. He does not, however, dispute Defendants' contention that his requested relief is now moot, nor does he challenge the statements made in his declaration. *Id.* at 1–4.

In reply, Defendants maintain that Layton's response "does not actually contradict the basis for dismissal asserted." Defs.' Reply 2. That is, Layton neither denies that his claims are moot, nor does he undermine his declaration. *Id.* "Rather, Layton argues that the lawsuit should continue solely so that other non-party TCCC residents may pursue their potential claims." *Id.* But in Defendants' view, "the potential joinder of additional plaintiffs does not alter the mootness of Layton's claims." *Id.*

## II.   Legal Standards

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Article III of the Constitution, they possess "jurisdiction only over cases and controversies." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (internal

---

[4] Although titled as a "Motion to Oppose Defendant's [sic] Motion to Dismiss" (ECF No. 61), the substance of Layton's filing reflects that he intended it as a response. *See also* Defs.' Reply 1 n.2, ECF No. 62 (interpreting Layton's filing "as a response to their motion to dismiss"). The Court therefore construes it as such. *See, e.g., Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (noting the Fifth Circuit has "oft stated that '[t]he relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label,'" when considering a pleading or motion's caption or heading (citation omitted)).

5

quotation marks omitted) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "There is no case or controversy without standing to sue." *Id.* (citing *Raines*, 521 U.S. at 818). A plaintiff establishes Article III standing by showing: "(1) an injury in fact that is concrete, particularized, and imminent, and is not conjectural or hypothetical; (2) a causal connection demonstrating that the injury is fairly traceable to the defendant's challenged actions; and (3) that it is likely—not simply speculative—that a favorable decision will redress the injury." *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382 (5th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"Although standing is assessed as of the date on which suit was filed, courts may not decide cases that since have become moot because there is no longer a live case or controversy." *Texas v. E.E.O.C.*, 933 F.3d 433, 449 (5th Cir. 2019); *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) ("One commentator has defined mootness as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (internal quotation marks and citation omitted)). When a court cannot "grant any effectual relief whatever to the prevailing party," the case becomes moot. *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks and citation omitted); *see Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) ("Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff."). "A motion under Rule 12(b)(1) may be brought for lack of subject matter jurisdiction on the grounds that a claim is moot." *Thompson v. United States*, No. 3:06-CV-2144-D (BH), 2007 WL 1412308, at *3 (N.D. Tex. Apr. 19, 2007), *R. & R. adopted by* 2007 WL 1536933 (N.D. Tex. May 21, 2007); *see* FED. R. CIV. P. 12(b)(1); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In evaluating its subject-matter jurisdiction, the court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (citation omitted). When a party challenges the court's subject-matter jurisdiction by submitting evidence such as "affidavits, testimony, or other evidentiary materials" with its Rule 12(b)(1) motion, the party makes a factual attack. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (internal quotation marks and citation omitted).

### III. Discussion

In support of their motion, Defendants submit a declaration signed under penalty of perjury by Layton. ECF No. 59. Thus, Defendants make a factual attack on the Court's subject-matter jurisdiction, as the Court must evaluate matters outside the pleadings. *Superior MRI Servs.*, 778 F.3d at 504.

In his declaration, Layton attests that he has ceased his gender transition and therefore "no longer want[s] any of the relief sought by this lawsuit"—i.e., to wear gender-affirming clothing and makeup, obtain SRS, and make changes to his name and gender markers. ECF No. 59. Layton specifically avers that he "made that decision independently, and without any pressure from others." *Id.* In his response to Defendants' motion, Layton does not challenge the voluntariness of the statements in his declaration, nor does he deny that he no longer wishes to obtain the injunctive relief originally requested in this action. *See* Pl.'s Resp. 1–4. Because the record shows

that Layton no longer desires any of the relief he sought through his Complaint, he does not have a legally cognizable interest in the outcome. *Meadows v. Odom*, 198 F. App'x 348, 349–51 (5th Cir. 2006) (per curiam) (concluding there was "no live case or controversy and mootness applie[d]," where appellants no longer sought employment as florists and thus, injunctive relief they pursued through suit—enjoining a Louisiana law that required retail florists to take a licensing exam—would "not afford [them] relief"); *cf. Campbell*, 842 F.3d at 382 (holding plaintiff did not have standing where the "alleged prospective injury" was "too remote to state a cognizable injury in fact" and injunctive relief "would not benefit [plaintiff]"); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1034–36 (S.D. Tex. 2016) (concluding plaintiffs failed to "establish Article III standing for injunctive relief because" plaintiffs had already replaced their faulty water heater valves and therefore the requested "relief would not redress their [past] injury and they ha[d] not demonstrated a likelihood that they face[d] a threat of future injury"). The fact that Layton may want to keep this case alive to obtain relief for *other* transgender residents at the TCCC does not alter this conclusion, particularly given the fact that Layton is the only plaintiff.[5] ECF No. 51 (denying Layton's motion to amend and join other transgender TCCC residents as plaintiffs); *see Superior MRI Servs.*, 778 F.3d at 504 ("One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks and citation omitted)).

In addition, Layton's change in position necessarily precludes application of the "capable of repetition, yet evading review" exception to the mootness doctrine. ECF No. 59. This exception applies when "(1) the challenged action is too short to be fully litigated before it ceases and (2) there is a reasonable expectation that the same complaining party will be subject to the same

---

[5] Layton has not filed a second motion to join other plaintiffs. Moreover, this Court has considered, and rejected, his prior attempt to do so. ECF No. 51, at 4–5.

action again." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006). "Plaintiffs must prove both to overcome mootness." *Shemwell v. City of McKinney*, 63 F.4th 480, 484 (5th Cir. 2023) (per curiam).

Layton has not established either prong. First, Layton renouncing his desire to wear gender-affirming clothing and makeup, pursue SRS, and obtain changes to his name and gender markers eliminates a fundamental element of the second prong—there is no longer a "complaining party." As such, he has not (and cannot) plead facts or submit evidence showing there is a "reasonable expectation" that he, as a complaining party, will be subjected to the same purportedly unconstitutional policies. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)) (holding that "[a] 'mere physical or theoretical possibility' is not sufficient to satisfy" the capable of repetition prong (citation omitted)); *see Meadows*, 198 F. App'x at 351–52 (explaining appellants failed to "show[] a 'reasonable expectation' . . . that they w[ould] reenter the florist business or retake the exam," where they were "retired, no longer residing in the state, or of unknown whereabouts"—"[t]hus, *as to these particular [a]ppellants*, state's alleged wrongful behavior . . . could not be expected to recur" (emphasis added) (citation omitted)); *cf. Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (reasoning appellants failed to establish second prong of mootness exception because they "would need to violate the law again, be apprehended again, and be placed on a waitlist while in pretrial custody again," but court was required to assume they would follow the law); *Flaming v. Alvin Cmty. Coll.*, No. H-17-1074, 2018 WL 4600644, at *5 (S.D. Tex. Sept. 24, 2018) (concluding plaintiff had not shown defendant-college's alleged unlawful conduct was capable of repetition, where plaintiff had graduated and would "not again return to [defendant-college] as a student seeking an Associate of Applied Science Degree"), *aff'd*, 777 F. App'x 771 (5th Cir. 2019).

Moreover, the event underlying Layton's suit—his gender transition—is not the type of event or condition that meets the duration requirement of the first prong. *See Meadows*, 198 F. App'x at 352 (observing that "[i]n cases involving strikes, pregnancies, or elections, the causal event or condition will terminate and preclude a challenge, unless it is cured by the exception"; in this case, however, "the only thing that . . . changed" was appellants' desire "to seek employment as a florist," thereby failing to establish the exception); *Jackson v. Mayorkas*, No. 4:22-cv-0825-P, 2023 WL 5311482, at *5 (N.D. Tex. Aug. 17, 2023) ("[T]he challenged regulation or law must be short enough to evade review because the causal or underlying event or condition is too short to be fully litigated.").

This action is therefore moot. *See, e.g., Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)); *Knox*, 567 U.S. at 307 ("A case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks and citation omitted)); *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (stating that a case "must be dismissed when 'an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party'" (citation omitted)).

### IV.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **GRANT** Defendants' Rule 12(b)(1) and (h)(3) motion and dismiss this case without prejudice for lack of subject-matter jurisdiction. ECF No. 58. The undersigned further recommends that if the district judge grants Defendants' motion, the district judge should also

**DENY as moot** Defendants' Motion to Stay Mediation Deadline (ECF No. 55), Layton's Motion for Appointment of Counsel (ECF No. 56), and Layton's Motion for Initial Designation of Experts and Witnesses (ECF No. 57).

## V.     Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 20, 2024.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE